Ladies and gentlemen, this is Casey. We'd like to ask 0127 Ambino v. WW Funding, and I have an SECO objection. motions that were filed and that we addressed and we granted that appear to have been faulty in their representation. Could the parties identify themselves? My name is Michael Braun. I'm here on behalf of the Ambino Foundation. We have a motion for substitution. Oh, I think we've granted that already. I think we've granted that. One of the reasons, you know, that we have you here is because, you know, this was a very, very important motion when somebody's held in contempt, trial judge sentences them to jail, and somebody comes in for a case like that, you know, you call the other side, you tell them what you're doing, if it's an emergency matter, everybody runs over, and here we had no objection to it, and they never got noticed. And you fellows say, well, you know, that's kind of inadvertent. It's not enough. What do you mean it's inadvertent? The judge was mistaken. You want to step up? I sincerely apologize. It's an embarrassment to me. It's an embarrassment. I understand the rules. I understand why there's rules about giving notice. I apologize to you. I apologize to you, Judge Garcia, and in extension, I apologize to Judge Cahill. I understand that the justices rely on lawyers like me to do things the right way, and I'm not a spring chicken. I've been doing this for 38 years. I know what the rule is. I know the local rule was violated, but it wasn't unintentional. It wasn't like I said to a clerk, please file, please send this by mail. A notice, I wasn't there. Ms. Beverly had received a notice, a certificate of service, a document that we had created. We had just been in court with Mr. Braun. We'd been in court on the lower court 305 motion. In the course of that hearing, we had advised the judge and Mr. Braun that we intended to come here, and then there was a mistake made. I don't have anything else to say about it other than I'm embarrassed by it. I apologize for it. It's my responsibility. As soon as I saw it, I called Mr. Braun. I talked to Mr. Braun about it. Mr. Braun and I have a long relationship. We have a cordial relationship, a collegial relationship, and I think he will tell you that he thought it was just a mistake. It was just an inadvertent mistake. And I know that this makes me look bad, and quite frankly, I know this makes you look bad, because you relied on me, because I'm an officer of the court. And there's really nothing else I can say, except I know the rules, and I know the reason for the rules, and I know better than to follow it. I failed here. And I would request that you would find that this wasn't willful. If you believe it is willful, I would request that you direct any sanction to me personally, because Ms. Beverly was acting in my direction. I have another question to you. I think you've explained the notice very adequately. But your initial motions, you said you needed time so this man could produce the record. And of course, when we set the bail, and before we vacated, there was quite a period of time lapse, and no records were produced to be able to vacate that. Let me tell you where I'm coming from. And now we get motion that there are no records. First, we need time to produce them, and then we get there are none. It's totally inconsistent. Well, I've talked to counsel about that, because I don't think counsel understood what we were saying when we said that to you. I'd like to make inquiry, if I may. Did you see the status report that was filed in the court the week after the... I read everything you've given. We made efforts every single day during that week, and we documented the efforts that we made, to go to third parties to get documents. In addition to that, we made efforts to have Mr. Seko go through his documents at his home again, or his office again, to make sure that he didn't have any documents. In addition to that, during that week, we offered the entire office file. We offered to bring it to have Mr. Braun come to us. We offered to have us bring it to the court and just bring all the files to the court. We offered to give both of our computers, which we hadn't done before. We offered all those things during that week. And every day during that week, I was working on searching for additional documents. Now, the document that I filed where I said he needed to be out looking for other documents, that document, they have suggested it may have been misleading in the sense that it suggested that he had more documents. He's testified continuously that he doesn't have any more documents. I represented him in at least three hearings where he testified to that. I represented him in at least three or four filings where I filed either... They may not have been verified, but I think they were verified. But the trial judge apparently feels that these are documents that are ordinarily kept by people, that he should have them or be able to create such documents for the I don't have any documents. Sometimes the courts, the lower courts feel that they're not telling the truth. And as you get older like I am, you want to make sure you get it right so there's no debate at the gate. You're not much ahead of me in age. Pardon? You're not much ahead of me in age. I don't know about that. Well, what sort of document, well, you know, we're sort of converting this into an opportunity to sort of flesh out the pending motions because we granted bail and we vacated and now we have an emergency motion to reconsider that or to grant bail once again. And the record sometimes isn't as complete as we'd like and so I'm taking this opportunity to ask, were the tax records being requested? Tax records were being requested that hadn't been finished. That was one of the things that we did that week. There were 1099s that were requested that hadn't been prepared. Are you talking about current ones? No, I'm talking about ones from two years ago. I'm talking about one of the issues in the... So to the extent that those are still being prepared, does that suggest that the motion that was filed by New Counsel claiming that the documents are unavailable or there are no documents to be produced is once again a little inaccurate? I received the motion yesterday and I had been in federal court on a sentencing and I got back about 3 o'clock in the afternoon and I have not really had an opportunity to review it except for the affidavit of Ivan Seiko. And I have been, Mr. Huffman and I have talked several times about that affidavit and he's going to see Mr. Seiko this afternoon to talk to him about the affidavit. Aside from that, Justice, I'm sorry, but I really can't comment on the motion because I haven't read it. All right. Okay. We'd like to hear from the other side. Mr. Brown, would you like to say something? Michael Brown, B-R-A-U-N, on behalf of the Gambino family. I've been involved in this case a long time. I accept Mr. Adamski's mea culpa regarding his office's mistake. Mistakes happen. I understand that. And I don't believe for a moment that Mr. Adamski intended to deceive either this court or myself. He apologized. I accept the apology and that's where I expect it to end. But I want to point out that what happened here was that this court on the 13th of January entered this order setting bond. We received it, I believe, late that afternoon. We moved as fast as we could and got our motion to reconsider on file the following day. That was the 14th, which we faxed to Mr. Seiko's counsel. Mr. Seiko's counsel should have, or Mr. Seiko should have seen immediately that there had been a mistake made. Immediately brought that mistake to the attention of this court and admitted it at that time. They did nothing for seven days. They waited for this court to finally, on the 20th of January, say we have not... Well, that's why we're here. We know all those things. That's why we're here. Right. So I'm not challenging any problems. I'm accepting it as a mistake that was made on the 14th. But then to not attempt to correct that mistake by Mr. Seiko, to come before this court to correct that mistake, I think was improper. I think it should have been done in a timely fashion rather than wait for this court to finally move on that. We have been attempting to obtain documents from Mr. Seiko since January of last year. Judge Arnold has had multiple motions addressed to this issue, multiple orders entered on this issue, has even conducted a citation of Mr. Seiko in court before her of a rather unusual situation for supplementary proceedings. Mr. Seiko has produced virtually nothing to substantiate over $200,000 worth of payments that were channeled through the defendant's wife, Susan Wolf, while he, the defendant, was under a supplementary proceeding. He has produced documents, for example, regarding a payment of over $20,000 that went to the wife that are physically impossible to support that payment because the documents relate to a transaction that had not yet occurred for over a year and, in fact, hadn't even been contemplated for over a year. So not only have documents not been produced, but the documents that had been produced were essentially deceitful. And that is exactly why the judge finally had to enter the order that she did in this case. And where is Mr. Seiko now? He has surrendered, is my understanding. He has surrendered. This court has been addressed with a motion to reconsider the vacation of the bond order, a supplement to that motion, a third motion to reconsider apparently has now come in regarding, and another appeal of, a second appeal, I guess, of the arrest warrant that was issued. I will indicate that it has also been presented to the bankruptcy court via Rule 362 to Judge Squires to say that because now that Mr. Seiko has filed a bankruptcy, that bankruptcy now stays all actions and stays the contempt proceeding. Judge Squires has yet to rule on that motion. I have been subjected to two assessments. When was the bankruptcy filed? The 27th of January, Your Honor. I file a motion to dismiss that bankruptcy for bad faith. That's going to be presented next week. These are all matters that are sort of laying in the weeds in the filings that are before this court, not necessarily directly addressed. So I'm suggesting to you that Mr. Seiko tried to take advantage of a mistake of his counsel by not basically asking that this court reconsider the vacation of that order. And Mr. Seiko should not be allowed to profit from it. Thank you, Your Honor. Thank you. Your Honor, Jeffrey Heftman, counsel for Mr. Seiko. I do wish to address the document issue, but first if I may respond to a comment by counsel. As we have gone over this matter and done our due diligence in transferring in, we've conducted a review of the record. We've discussed these issues with many parties and counsel of record. We do not believe that this was any pernicious act in the failure to provide notice as the rule requires. It appears seemingly innocuous, and we don't think it was certainly done for the benefit of Mr. Seiko. But I think it's improper to impute that procedural issue that attorneys handled to Mr. Seiko individually, and that's just what Mr. Braun seeks to do right here. Mr. Seiko, there's no evidence that Mr. Seiko instructed anyone to send these by regular mail or advised anyone to correct that error. And just as here, where that conduct is trying to be imputed to him, it's very clear that the trial court looked at that also. And on the 31st, it was on the 28th, the motion for suggestion of bankruptcy and to vacate the arrest form was filed before the trial court judge. And the order which the court prepared makes zero reference to the actual issue of law, of what happens to a civil contempt proceeding when a bankruptcy falls. In fact, all it addressed were, quote-unquote, the devious means by which Mr. Seiko had obtained his release. And we dispute that, and we take issue with that characterization. But I think that the trial court was looking at that issue entirely rather than... You know, I have to stop you there because I'm not buying what you're just saying. Underlying what you're claiming is that a bankruptcy filing can somehow stop a contempt proceeding that simply seeks to require the party to turn over documents. I'm not familiar with bankruptcy law, but if a bankruptcy filing was simply a get out of jail card or get out of contempt proceeding, that would be pretty amazing. Bankruptcy simply stops a collection proceeding. Bankruptcy stops efforts to put the individual in a worse financial situation than he otherwise would be until the bankruptcy court addresses those financial issues. Is this an issue of finances before Judge Arnold? Well, Judge, there is a motion pending before Judge Arnold. Is the underlying issue before Judge Arnold that gave rise to the contempt finding a financial issue? I believe it is, Judge. Well, is it directly financial? You're being a lawyer. You're entitled to be a lawyer. But it certainly sounds like produce a document. But to what end? There has already been a $167,000 judgment entered against Mr. Seiko as a sanction by Judge Arnold for his failure to document a payment that was made to Mrs. Wolf. There is a pending motion for fees against Mr. Seiko that is entered and continued that the automatic stay would prevent. Now, these documents which are being sought are not sought for no end. They're being sought to actually enforce monetary judgments. Well, but maybe that's where the bankruptcy stay can enter when there's actually an attempt to collect. But until then, I think the courts, state courts, regardless of the federal courts being involved, have a right to enforce their own orders. And you enforce your own order by finding an individual in contempt. And there's a distinction that both the bankruptcy courts and Illinois appellate courts recognize between the nature of the contempt, whereas criminal contempt is designed to ensure that the proper respect for the court and the system is maintained. This is where individuals have been in contempt because they didn't testify before a grand jury. I don't understand this argument that somehow bankruptcy filing can stop. Let's assume that it does. There's a motion pending in the bankruptcy court now to lift the stay. There's a motion to enforce the stay. So there's no motion to lift the stay. Part of that probably should be a motion to lift the stay, but there isn't any motion to lift the stay. But the dismissal would lift the stay. If the bankruptcy petition were lifted. But lifting the stay is something that is done simply, and dismissing is not done so simply. That's correct. Let me ask you this. What's pending before this court, just so it's clear, is simply a decision to review what we've already decided. And to that extent, the federal bankruptcy stay, to the extent that it has any impact on us, doesn't require us to undo stuff that we've already done, does it? We have a motion to reconsider that was filed in the original appeal. But how can we consider anything if there's a bankruptcy? Your Honor, we think the automatic stay is being violated right now by virtue of the enforcement of the arrest warrant. And that's a matter that can be addressed to the federal courts, to the federal bankruptcy court, asking the federal bankruptcy court to enjoin or enjoin the state courts from enforcing what we've already entered, and let the federal court decide that. Mr. Seiko's bankruptcy counsel was before Judge Squires on this very issue and argued that this was an emergency matter. And for whatever reason, Judge Squires decided this was not an emergency. Now, Mr. Seiko voluntarily surrendered himself to the Cook County Sheriff on the 7th. He's been in Cook County Jail since then with no bond. Judge Squires said this is an emergency. I'm going to hear it in a routine course. At some point we have to stop this, but let me just say this. I'm not inclined to do something that the federal bankruptcy, by virtue of a federal bankruptcy filing, that the bankruptcy court itself is unwilling to do. Well, it's being briefed, Judge. If I may briefly address the motion to reconsider on the question of the documents. Mr. Seiko has put an affidavit forth that I think is consistent with his prior testimony before the trial court, that he possesses no documents in his possession. They have not been created, Judge, and he has an accountant. Before he went back in, my understanding is he was going to his banks, he was going to his accountant to say, can you generate documents which do not yet exist? What about tax returns? I believe, Your Honor, that those tax returns which have been filed and created have been produced. Over 2,000 pages of documents have been produced. So are you suggesting that we send this back to the trial court and let her try to resolve whether Mr. Seiko has acted in good faith, has produced all the documents that he's able to produce, and put it all in her hands? We're not going to delve into the facts in this case. This Court previously ruled that Mr. Seiko is entitled to bond under these circumstances, and the notice issue appears to have clouded that. The record is clear that Mr. Seiko has made extensive production. He's testified he doesn't have any further documents. The trial court elected not to give credibility to that statement, but there's nothing in the record that's clear. Isn't that inherently a matter for the trial courts to decide? That is within her purview to not make a decision as to credibility. But under the Messick decision, Judge, which was brought before the Court's attention, simply identifying in the absence of evidence controverting the statement, mere disputes of credibility are not sufficient to impose findings of indirect civil contempt. This is my point, counsel. I'm not suggesting that you're off base here. I'm just saying that at some point we have to get an evidentiary finding produced, and that should be done by the trial court. So we send the case back to the trial court. The trial court can hear these very arguments that you're putting forth, the case law that you're citing, and decide whether or not it compels her to act in a certain way. And if she doesn't act the way you'd like her to act, then you could bring it back before us, and we could review that. But I don't see why we should be reviewing this in the first instance. Judge, I think that we've really tried prior counsel and our efforts before Judge Arnold have really been exhausted. A motion for bill of particulars filed to ask the Court and counsel, please identify which specific documents you believe Mr. Seiko possessed. That was denied summarily. Offers to Mr. Braun and to the Gambinos have been made to avail yourselves of everything. Come into our office and look at all documents to satisfy yourself that we do not possess the documents which you seek. That was rejected. There was a request under the Rule 20-04 examination of the bankruptcy rules to come and do an examination, which would not be subject to the automatic state. That was declined. Mr. Seiko does not possess the keys to his jail cell right now. And having been before Judge Arnold on this matter, she does not appear to have any desire to let Mr. Seiko out. He's not to appear before any statuses. There has been extensive motion practice before her. She has made evidentiary findings that she just doesn't believe Mr. Seiko. But there's no other evidence before that court or in the record to indicate that there are documents. So really what you're saying is you don't even have the records to make the tax returns for the missing years. Is that what you're talking about? Your Honor, I believe Mr. Seiko had worked with his bank to get all documents, checks that showed transfer that he was in discussions with his accountant. If that accountant comes forward with those documents, we will expeditiously produce them. But we have a situation where Mr. Seiko, there's no financial benefit for Mr. Seiko to be withholding. He doesn't have money judgments against him right now. But he's not answering my question. You know, I once had a case where a guy did the same thing you did, went into the bankruptcy court. The bankruptcy judge turned it over to the Internal Revenue Service. They indicted the guy for not filing his tax returns. And I came in as the lawyer, and I had to make some tax returns. The bankruptcy had no records, but we filed tax returns. That's how we beat the indictment. I mean, you know, here we have somebody who hasn't filed his tax returns. I don't believe that that's accurate, Judge, and I haven't seen it on record. My understanding is that there's some 1099s which had not been prepared. But I really can't make representation. Well, 1099 is part of the rules of tax returns. And that's the problem. I think you're going to get yourself into a bigger problem, the good lawyer that you are. You know, you're using all the methods that you can, and I understand that, trying to represent your client. That's your job as a lawyer. You guys are all good lawyers. But the question is that, you know, you may get yourself into really hot soup by this thing. Judge, all we're looking for at this point is Mr. Seiko is a third-party respondent. He has had no involvement in the underlying judgment against the litany of defendants, Mr. Wolf. He's been involved in these post-and-supplemental proceedings. He had a judgment against him that was the result of a sanction. That's up on appeal. But he's a third-party respondent who sits, voluntarily surrendered to the sheriff, and sits in jail with no means of relief at this point. And the only evidence in the record indicates that every document which he currently possesses he has produced and that it's not controverted. And we believe that the Illinois law is clear that in the face of that, in the paucity of any contradictory evidence, it's plainly improper for a trial court. Yeah, but we're only dealing with motions now. We don't have the whole record before us. That's correct. We're not in a position to make any decision on those things. The court is in a position right now to say that a third-party respondent who has testified that he does not have documents, that there's no basis for that man to sit in custody with no bond. He is not a flight risk judge. The man has two children. He's a businessman in the community. He's been here for 20 years. There simply is no basis to say that under those circumstances, a man should not be able to have bond that the court previously granted. And we'd ask the court not. We filed these motions to visit them anew so that issues of notice would not cloud that issue. But those facts remain that Mr. Seiko stands without the keys to his shelf, no means to purge this indirect civil contempt. And under these circumstances, we think that there's an equitable basis for the court to grant Mr. Seiko a bond, allow these matters to play themselves out, then back in the trial court while the underlying appeal on the money judgment works itself out. But it simply does not serve the interest of the creditor, Mr. Seiko, or the court to have a man under those circumstances in jail, potentially for perpetuity, when he has testified, I've given you everything that I have. All right. And just briefly, the affidavit, Judge, we just feel that Mr. Seiko understood that he was going to go out and try and rattle the cages of third parties, his banks. But it was that statement that if released, he could produce, was certainly lashed on to say, ah-ha, see, Mr. Seiko was lying all that time. He actually has documents that he was holding. And we don't vigorously dispute that. I don't think that was counsel's intent when that language was drafted. The English language is the English language. It says what it says. See, that's the problem. You know, lawyers, they take a pair of glasses like this and they make it into an elephant. But it's a pair of glasses, and we know it is. We would stand by Mr. Seiko's evidence, his testimony under oath in the trial court, that he does not have additional documents in his possession or control. And that's not been disputed. All right. You'll have to wrap it up. Thank you, Judge. All right. Thank you. If you may, I have a question. You want to give him a minute? Sure. It's just a question. I now have two further urgency motions to set bond with regard to Mr. Seiko. Are you expecting the Gambino family to file responses to that, or is this sufficient? It's always held. Except that they're reconsiderations. And my understanding, the rules don't require parties to file a response to a motion for reconsideration. I'm afraid to bridge that. But they filed another appeal, and there's a motion to do that. So, I mean, I will file a motion. Whenever. You have ten days, and that's certainly your choice if it's a new motion. Well, since it is an emergency motion, I would suggest as soon as possible. May I make one final motion? Sure. Counsel pointed out that I didn't come in and say anything about this motion for reconsideration. And the reason I didn't is because I read the rule. The rule said that I don't have a right to do that unless you tell me to. All right. Thank you. Thank you very much.